[Crim. No. 3581. First Dist., Div. One. Aug. 21, 1959.]

THE PEOPLE, Respondent, v. WILLIAM HENRY MALONE, Appellant.

William Scammon for Appellant.

Stanley Mosk, Attorney General, Clarence A. Linn, Chief Assistant Attorney General, Victor Griffith and John Schatz, Jr., Deputy Attorneys General, and Louis P. Bergna, District Attorney (Santa Clara), for Respondent.

TOBRINER, J.—Appellant's conviction for conspiracy to commit abortion cannot be reversed upon any one of his proffered three grounds: (1) any failure of the arresting officer to testify as to the factual basis for his entry into the room in which his undercover agent was purportedly to undergo an abortion was cured by appellant's own elicitation of the officer's testimony that he had reasonable cause to believe a crime was about to be committed and by appellant's stipulation that the court could consider previous testimony which disclosed such reasonable basis for the officer's belief; (2) the omission of the trial judge to reinstruct on entrapment did not constitute reversible error; (3) while the instructions as to the admissibility of testimony of prior abortions failed at the moment of its introduction to define clearly the limited significance of such testimony, later clarification corrected any confusion, and the testimony, itself, proving criminal intent by a showing of similar other offenses, was admissible.

The information in this case charged appellant with a violation of Penal Code, section 182 (conspiracy to commit a

felony, to wit, abortion), alleging four overt acts, all of which the jury found to be true. The information also charged a prior conviction of abortion, which appellant admitted.

As in most criminal cases, a detailed recital of the facts here is a necessary prelude to an analysis of the points of law. The preliminary event took the shape of information obtained by Gerald Mossholder, a member of the Santa Clara County Sheriff's Reserves, that Iris Cancilla and Louise Bernal might be engaged in a conspiracy to commit an abortion. On April 21st, Deputy Sheriff Bettencourt, posing as "Bob," contacted Cancilla at the Lucky Drive-In in San Jose and represented that he was a friend of a girl "in trouble," saying he was "nervous." Cancilla answered, " 'Well, don't be nervous. This doctor is very good,' " and went on to explain the proposed abortion procedure. She likewise stated that the "doctor" had "performed numerous abortions" and not only in San Jose but also in Las Vegas, Nevada. The two fixed the price at $400, an amount that was later raised to $450.

The same night Cancilla phoned Bettencourt that "she could not locate the doctor." The next day Mrs. Bernal, speaking for Cancilla, phoned Bettencourt to say that "Dr. Malone" had been arrested in Fresno. Two days later, Cancilla phoned that the doctor was in town and wanted to meet him at the Lucky Drive-In. The parties met. Because of his troubles in Fresno, "Dr. Malone" sought to do the abortion in Mexico, but the next day called Bettencourt to say that he could perform the operation in the San Jose area.

On April 29th, Cancilla told Bettencourt that appellant was ready to operate that night. They arranged that Bettencourt and Mrs. Hoffman, a deputized sheriff, who posed as Bettencourt's pregnant friend, meet Cancilla in Sear's Parking Lot. The meeting occurred, Mrs. Hoffman accompanying Bettencourt to it. Captain Salt and Inspector McHugh, arriving in another automobile, observed this meeting. Thereafter, the parties, that is, Bettencourt, Hoffman, Cancilla and Bernal, left the parking lot and went to Si's Drive-In in Santa Clara. When Cancilla and Bernal arrived, they discussed the abortion with Bettencourt and handed him several pills, Cancilla saying the yellow one was ergot and the others sedatives. Appellant appeared; Mrs. Hoffman took the pills.

The group then left the drive-in, Bettencourt, Hoffman and Bernal in one car, Cancilla and appellant in a second car, followed by Captain Salt, Inspector McHugh and Sergeant

Gorham in a third car. Upon arriving at Casa Camino Motel in Mountain View, Bettencourt registered for Room 26 and Cancilla rented Room 16. Cancilla then went to Room 26 and, stating that appellant desired Mrs. Hoffman to be more drowsy, gave her another pill. Bettencourt went to Room 16, where he found appellant.

In response to Bettencourt's question as to how appellant intended to perform the operation, appellant demonstrated and stated that he would cover the bed with a plastic sheet and place chairs with pillows alongside the bed so that the patient's legs could be extended over the backs of the chairs. Bettencourt and appellant then went to Room 26 and appellant agreed to accept $430 rather than $450. Bettencourt also asked to stay with Mrs. Hoffman during the operation but appellant refused, stating that he had allowed this to happen in Fresno and as a consequence would probably be faced with . witnesses.

Mrs. Hoffman, Bernal and appellant went to Room 16. Mrs. Hoffman asked if she should remove all her clothing, but was told only to remove the bottom portion. Meanwhile in Room 26 Bettencourt gave Cancilla $430. Sergeant Gorham came in and arrested Cancilla. Inspector McHugh and Captain Salt went to Room 16, and, entering with a pass key and without a warrant, arrested appellant. Rose Ross, a matron in the sheriff's office, followed and in the closet of the room found a box which she turned over to Captain Salt.

At the trial of appellant the prosecution introduced this box as People's Exhibit Number 2, and Dr. Dreier, chief resident at the county hospital in obstetrics and gynecology, testified the instruments and medications contained in it were usable in performing an abortion.

We proceed to a consideration of the first suggested ground for reversal. Because the arresting officer obtained People's Exhibit Number 2 by entering into Room 16 with a pass key and without a warrant, appellant contends the prosecution was required to present the detailed factual justification for the entry. However, as we shall point out, appellant himself adduced from the officer the statement that he had reasonable cause to suspect the commission of the crime and agreed that the court could consider evidence in the record which disclosed the basis for the officer's conclusion. Having induced the officer's conclusion, appellant cannot properly condemn the absence of the details upon which the conclusion rests.

Since *People* v. *Cahan* (1955), 44 Cal.2d 434 [282 P.2d

905, 50 A.L.R.2d 513], the tenet that "evidence obtained in violation of the constitutional guarantees is inadmissible" (p. 445) has become basic in the law of this state. We no longer question the fundament that a court may not properly receive evidence obtained through unreasonable search and seizure. (*People* v. *Berger* (1955), 44 Cal.2d 459 [282 P.2d 509] ; *People* v. *Tarantino* (1955), 45 Cal.2d 590 [290 P.2d 505].) ▇ In *Badillo* v. *Superior Court* (1956), 46 Cal.2d 269 [294 P.2d 23], our Supreme Court granted a writ of prohibition to prevent the trial of petitioner upon the ground that the prosecution had seized the convicting evidence in violation of his constitutional rights. Petitioner "makes a prima facie case when he establishes that an arrest was made without a warrant or that private premises were entered or a search made without a search warrant, and the burden then rests on the prosecution to show proper justification." (P. 272.)

▇ It is true that in the ordinary case the arresting officer "must testify to the facts or information known to him on which his belief" that there is justification for search without a warrant rests. (*People* v. *Boyles* (1955), 45 Cal.2d 652, 656 [290 P.2d 535].) Proper justification rests upon a showing of reasonable cause for entry. (*People* v. *Roberts* (1956), 47 Cal.2d 374 [303 P.2d 721].) ▇ A search without a warrant incidental to a lawful arrest is valid only " 'if it is reasonable and made in good faith' " and in such instance " 'evidence related to the crime is permissible.' " (*People* v. *Winston* (1956), 46 Cal.2d 151, 162 [293 P.2d 40], quoted from *People* v. *Coleman* (1955), 134 Cal.App.2d 594, 599 [286 P.2d 582].) The recitation of such testimony affords to the court the opportunity of judgment as to whether or not the facts disclose reasonable grounds for the entry.

▇ In the instant case, referring to Inspector McHugh's entry into Room 16, appellant asked McHugh if "the reason you went in there is because you thought there was reasonable cause to believe that a crime was being committed." McHugh answered in the affirmative. Appellant's question waived the requirement for the exposition of the facts upon which McHugh's conclusion rested.

*People* v. *Boyles, supra,* cited by appellant himself, holds that the establishment of the reasonable basis for the arresting officer's belief a felony is being committed becomes unnecessary if a defendant prevents its introduction. Thus, in *Boyles,* "[w]hen the prosecuting attorney sought to establish" the

basis for the officer's belief, "defendant objected and the committing magistrate ruled that the matter should be gone into on cross-examination. . . . Since defendant successfully *prevented* the prosecution from presenting such evidence, if any, she cannot now contend that the evidence . . . was necessarily illegally obtained. . . ." (Emphasis added; p. 656.) Similarly, when appellant asks for the officer's conclusion as to the reasons for his entry, appellant can hardly contend his opposition must then proceed to expose the roots of the conclusion.

Appellant's question involved the gambler's risk. Appellant obviously hoped that the question would fetch a negative reply, in which case the prosecution could not have introduced Exhibit Number 2. But the question prompted the very opposite answer, and appellant is bound by it. We do not see how appellant can lose on the reply and still win on the gamble.

■ Appellant's contention, which is actually premised upon the inadmissibility of conclusionary testimony, becomes even more ephemeral in the light of the rule in 1 Wigmore, Evidence (3d ed., 1940), section 18, page 344, that an "opponent whose *question calls in advance* for obviously inadmissible evidence has thereby waived objection to the answer." *Robison* v. *Superior Court* (1957), 49 Cal.2d 186 [316 P.2d 1], in passing upon whether or not the committing magistrate properly considered evidence of defendant's possession of a narcotic when the arresting officer did not have "a warrant for defendant's arrest or . . . a warrant authorizing him to search defendant," held that defendant waived any objection to the evidence by "failing to object at the preliminary hearing to the admission of the evidence. . . ." The court said: "[D]efendant waived his right to claim that the evidence was improperly received because it had been illegally obtained contrary to the rule announced in *People* v. *Cahan*, 44 Cal.2d 434 . . . [citing cases]." (P. 187.)

■ Finally, appellant himself presented to the court the opportunity of weighing and considering the whole record to determine if the officer's conclusion rested upon reasonable grounds. When appellant objected to the admission of the evidence, and that matter was argued before the court without the jury, the prosecution asked this question: "If Your Honor please, I suppose for the purpose of this motion or this determination, we can take into consideration the evidence that has been introduced heretofore by the other witnesses

rather than recalling each witness in particular. Is that agreeable to you, Counsel?'' Appellant answered, ''I will so agree,'' attaching a proviso immaterial to this discussion. Hence the appellant opened the gate to the court's consideration of such matters in the record as the fact that McHugh had personally observed the meeting of Bettencourt, Hoffman, Cancilla and Bernal at the drive-in and that McHugh had followed the group to the Casa Camino Motel, where the contemplated abortion was to be performed. Hence the court had before it in some part at least the very evidence which disclosed the grounds for the officer's conclusion.

Disclosure of the supporting facts by the officer himself serves only to enable the court to determine if the officer had reasonable and probable cause for the arrest. Here appellant stipulated that the court could directly make such a determination as to McHugh's conclusion from the record itself.

The record affords sufficient bases for the trial judge's determination that McHugh's conclusion did rest upon reasonable grounds; this appellate court has no reason to reject that determination. (*People* v. *Newland* (1940), 15 Cal.2d 678 [104 P.2d 778]; *People* v. *Dewson* (1957), 150 Cal.App. 2d 119 [310 P.2d 162].)

Appellant thus cannot object to the admission of People's Exhibit Number 2 as illegally procured evidence when appellant himself induced the testimony of the officer's conclusion that he had reasonable cause for the entry and stipulated that the court could examine a record which disclosed reasonable grounds for the officer's conclusion; appellant thereby waived, and made unnecessary the officer's own further testimony as to the factual foundation for the conclusion.

Appellant's second point, premised upon the omission of the trial judge to reinstruct on entrapment, did not constitute reversible error. Failure to give the instruction was not deliberate. Its omission did not constitute such a miscarriage of justice (Cal. Const., art. VI, § 4½) as to justify a reversal.

After retirement the foreman of the jury sent a note to the judge which asked, ''Will you read your instruction on law covering conspiracy. Also play tape back.'' The judge stated that he had given a number of instructions on conspiracy and requested if any particular ones were desired. The foreman answered that he wanted ''to know . . . when it becomes . . . conspiracy. . . . In other words, I believe what they are

trying to get at is at . . . what point does the conspiracy start. Say, in other words, bringing entrapment into this too. . . . That is two separate things." After the replaying of the tape recording the court said: "Now, ladies and gentlemen, you wanted some further instructions or, at least, clarification of just what conspiracy is. Is that the idea?" The foreman replied, "Right."

After reinstructing the jury on the law of conspiracy, the trial judge told the jury that if they wished anything further that he would be available. The court did not reinstruct the jury on entrapment.

While Penal Code, section 1138, establishes a mandatory rule as to reinstruction, and while a deliberate refusal to reinstruct might constitute prejudicial error, here the judge inadvertently failed to reinstruct on entrapment. The jury recorded in a note form its request for instruction as to the conspiracy. The foreman orally asked for reinstruction on entrapment. Apparently after the replaying of the records and the reading of the conspiracy reinstruction, the matter of entrapment retreated into the limbo of forgotten things. Neither the defendant, the district attorney nor the jurors mentioned it. This unanimous lapse indicates the relative unimportance of the omission.

Nor does appellant advance his position by claiming that the "oversight was pointed out to the court." Only upon a motion for new trial, two weeks after the return of the verdict, did appellant "point out" that the reinstruction should have been given. Appellant utterly fails to show deliberate or fatal refusal of the court at the time of the request to reinstruct on this matter.

Appellant's third ground for reversal assails the failure of the court to instruct the jury clearly that the purpose of the testimony of two witnesses as to previous abortions should be confined to the proof of appellant's criminal intent demontrated by his commission of similar other offenses.

In the first instance we must determine if the testimony introduced for such purpose was properly admitted. Certainly evidence of prior criminal conduct can produce a dangerous and adverse effect upon a defendant. Because it tends to excite prejudice against him in the very case for which he is being tried and because in substance defendant is confronted with charges of guilt of other crimes without the embracing protection of due process, such testimony must be treated cautiously and with proper safeguards. (*People* v.

*Darby* (1944), 64 Cal.App.2d 25, 32 [148 P.2d 28]; *People* v. *McCullough* (1958), 158 Cal.App.2d 310, 313 [322 P.2d 289]; *People* v. *Cassandras* (1948), 83 Cal.App.2d 272, 279 [188 P.2d 546].)

The courts permit such testimony in a situation in which "an offense is of such a nature that proof of the act with which the defendant is charged is not in itself proof of the required criminal intent and where additional proof of such intent is necessary to prove the crime charged. . . ."

The evidence of such "other offenses" must be "of a similar nature committed by the defendant." (*People* v. *Coltrin* (1936), 5 Cal.2d 649, 656 [55 P.2d 1161].) In a recent opinion, *People* v. *Stuart* (1959), 168 Cal.App.2d 57 [335 P.2d 189], Presiding Justice Bray stated, "Evidence of other abortions is admissible where those abortions were similar to the one at issue." (P. 59.) In *People* v. *Morani* (1925), 196 Cal. 154 [236 P. 135], involving a prosecution for murder which resulted from defendant's abortion operation, the prosecution introduced witnesses who testified that three and one-half years previously the defendant had performed an abortion upon another woman in the same manner as the one with which he was charged. The Supreme Court ruled: "It is well settled that a defendant in a criminal case can be tried for no other offense than that charged in the indictment or information. . . . But this rule does not exclude such evidence [of other crimes] when it logically tends to prove any fact necessary or pertinent to the proof of the crime for which the defendant is being tried." (Pp. 157-158.) To the same effect: *People* v. *Miner* (1950), 96 Cal.App.2d 43, 51 [214 P.2d 557]; *People* v. *Westek* (1948), 31 Cal.2d 469, 480 [190 P. 2d 9].

In our case the prosecution charged appellant with a conspiracy to commit an abortion, and a necessary element of such conspiracy is the intent to violate the law. (11 Cal.Jur. 2d, § 12, p. 232.) The prosecution faced the requirement of proof of such intent. A showing of similarity of method in committing other abortions would be admissible to prove the intent requisite to the instant charge of conspiracy.

The testimony of Filippi and Whitaker established a similarity in the methods used by appellant in past abortions to those employed and contemplated here. The pattern discloses itself in these characteristics common to all three situations: (1) the prescription of preoperative pills to make the

246

women "groggy," (2) the selection of a motel room for the situs of the operation, (3) the use of a plastic sheet to cover the bed, (4) the putting of pillows on chairs positioned alongside the bed, (5) the placement of the abortee's legs over the backs of these chairs, (6) the removal of only the lower part of the clothing for the performance of the operation. To apply the language of *People* v. *Cassandras, supra* (1948), 83 Cal. App.2d 272, these are "other acts with a sufficiently high degree of common features with the act charged to warrant the inference that if the defendant committed the other acts he probably committed the act charged." (P. 280.)

Appellant's attempt to discount such testimony upon the grounds of lack of corroboration under Penal Code, section 1108, and lack of proof of identity of appellant fails. The section does not apply because it pertains to "trial" for abortion, and appellant was not on trial for the previous abortions.

Furthermore, *People* v. *Ames* (1957), 151 Cal.App.2d 714 [312 P.2d 1111], holds that the testimony of one abortee is corroboration of another abortee's testimony. The discrepancy in Filippi's reference to a "Doctor Malone" and "William Henry Malone," the name under which appellant is charged, is in substance miniscule. In any event, when Filippi was asked if she saw the defendant in Fresno she responded, "Yes. . . ." She also testified she went to a motel room with appellant whom she knew as "Doctor Malone." Whitaker testified that she saw appellant in March of 1958 but did not know his name; in response to appellant's question as to whether she ever paid "Mr. Malone" $300, Whitaker responded that she paid him $100. Finally, if appellant believed the identification failed, he should have objected to the testimony on the ground of relevancy. He did not. We conclude the testimony was admissible.

It is true, however, the admission should have been for a guarded and limited purpose; yet the court's instruction was not clear. The earlier portion of the instruction, particularly the words which we italicize, carried an erroneous impression: "Now, this evidence may be heard by the jury solely *for the purpose of showing that the defendant committed the other crime,* other than the one of which he was accused here and for which he is on trial here, and that that evidence may be admitted and considered by the jury solely for a limited purpose only, not to prove the distinct offenses or continued criminality . . . ."

The remaining portion of the instruction, which we set out,

correctly states: "The value of such evidence depends entirely upon whether or not it tends to show, first, that the defendant entertained the intent which is a necessary element of the alleged crime for which he is now on trial as pointed out in other instructions which will be given you or, two, that there existed in the mind of the defendant a plan, a scheme, system, or design, into which fitted the commission of the offense for which he is now on trial. Unless it complies with those conditions, you are to entirely disregard any evidence that is now being offered and which may be introduced as to any abortions claimed to have been committed by the defendant elsewhere."

Although we are sensitive to the importance of a careful instruction as to the limited applicability of testimony of such potential danger, we cannot find prejudicial error in the partial vagueness of the instant one. However defective the instruction as such may have been, it must be evaluated in the light of the following circumstances:

(1) The district attorney made quite clear that he proposed to show by the witness that appellant "committed an abortion . . . in the County of Fresno under methods similar to those shown by the conspiracy . . ." in the case at trial and further stated, ". . . I will ask that the jury be advised that the evidence produced at this time can only be considered by them for the purpose of showing an intent to commit the offense . . . and that there existed in the mind of the defendant a plan, scheme, system and design to which fitted the commission of the offense for which he is now on trial and that this evidence not be considered by the jury for any other purpose and, certainly, not for the showing of continued criminality or anything such as that."

(2) Whatever the erroneous import of the first portion of the instruction, the latter part limits it to the "bearing, if any," it might have upon the guilt of the appellant in the instant charge. The instruction proceeds to state that the value of the evidence "depends upon whether or not it tends to show, first, that the defendant entertained the intent which is a necessary element of the alleged crime . . . or, two, that there existed in the mind of the defendant a plan, a scheme, system, or design, into which fitted the commission of the offense for which he is now on trial."

(3) When the second witness, Whitaker, was about to testify, the court stated her testimony would be "under the

same conditions that I indicated to you . . . when the last witness [Filippi] was sworn.'' If appellant then did not so much as point out any error, we doubt the importance of the initial confusion in the Filippi instruction. If, at the moment of its impact, the instruction as to Whitaker meant no more to appellant than silence, we are at a loss to find its new appellate stature.

(4) Finally, People's Requested Instruction Number 32 properly defines the limited purpose of the testimony. The court gave this instruction as its very last before the jury went into the jury room. This, then, created the most potent imprint upon the jury's minds.

These persuasive factors lead to the conclusion that the partially erroneous instruction did not mislead the jury into a different result than if it had not occurred. Whatever the error, it in itself would not have endured to the extent of inducing the jury to fasten a conclusion upon this stray thread in a composite and proper design.

We affirm the judgment and the denial of the new trial.

Bray, P. J., and Wood (Fred B.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 15, 1959.