[Crim. No. 4563. First Dist., Div. Three. Mar. 9, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. HARRY LEE CAMPBELL, Defendant and Appellant.

Arthur Brunwasser, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edward P. O'Brien and John F. Kraetzer, Deputy Attorneys General, for Plaintiff and Respondent.

DRAPER, P. J.—Convicted of forcible rape (Pen. Code, § 261 subd. 3), defendant appeals.

At about 3:45 a.m., the prosecutrix left her car and its occupants near Fourth and Harrison Streets in San Francisco. She walked around a corner. As she returned, a man seized her, dragged her into a parking lot, and raped her. Police were summoned, took the woman to an emergency hospital and received from her a description of the rapist and of the clothing and glasses he wore. Shortly thereafter, a policeman saw a man answering that description a short distance from the scene of the crime. The officer questioned the man, who said that he was walking home from specified places where he had spent the past several hours. The prosecutrix was brought to the scene in a police car. Upon seeing defendant, she became somewhat hysterical but identified him as the rapist. He was arrested and booked. At 11:45 a.m., he was questioned by police in the station. Questions and answers were recorded on a tape. The interrogatories were directed to the alibi defendant had given when first stopped

by the policeman, and he gave a detailed statement of his whereabouts, which would show that he could not have been present at the scene of the rape at the time it occurred.

In the prosecution's case in chief, the prosecutrix identified defendant as the rapist. An expert testified that a button found at the scene of the crime was torn from defendant's shirt. Marks on defendant's clothing were shown by analysis to have come from objects at the scene of the struggle between prosecutrix and the rapist, and other persuasive circumstantial evidence was produced. Also, the officer who stopped defendant at about 4:30 a.m. and the officer who interviewed him in the police station at 11:45 a.m. summarized his statements to them. The state also produced testimony of one witness whom defendant's pretrial statements claimed to have been with him shortly before the crime. This witness denied seeing defendant that night. Defendant presented his evidence. He testified to an alibi which varied in some respects from that he had given to the police. He called a witness who failed in a material respect to substantiate this testimony. The prosecution, in rebuttal, offered and played the tape recording of defendant's late morning statement of his alibi.

Defendant argues that the evidence of his statements to the police was inadmissible because he was not advised of his right to counsel and to remain silent (*People* v. *Dorado* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]). *Dorado,* however, cannot apply to the 4:30 a.m. conversation with the policeman who first stopped defendant. Suspicion had not yet focused and the investigation was but a general inquiry into an unsolved crime. By the time of the 11:45 recorded interview, however, suspicion had indeed focused upon defendant, who had then been identified by the victim as the rapist, and had been arrested. But the identification had been somewhat hysterically made, and the expert's tests of the defendant's clothing had not been completed. It is apparent that the questioning was not designed to obtain incriminating statements or to elicit a confession. Certainly, it did not achieve that result. Rather, it dealt with his claimed alibi. If his claim proved correct, there was little reason to hold or try him. It was but fair to defendant that details of his exculpatory statement be secured and checked, as their correctness would exonerate him. As it turned out, investigation disproved his claims, but there is nothing to show that this was at all apparent at the time of his statement.

Defendant cites eight instances of claimed misconduct by the prosecutor. ■ As to one, objection was made upon the sole ground the question had been asked and answered. But the only question on the subject had been by defense counsel on direct examination. Sustaining the objection would have unduly restrained cross-examination. ■ In any event, the objection did not assign misconduct, and thus cannot support the present claim on appeal (Witkin, Cal. Criminal Procedure, § 747). ■ In another instance, defense objection was promptly sustained, and the subject was effectively closed. Since defendant did not ask admonition of the jury, he cannot now complain of its absence (*People* v. *Davidson*, 23 Cal.App.2d 116, 119-120 [72 P.2d 233]), particularly since the court's closing instructions directed the jury to disregard any intimation by counsel that hinted facts were true. ■ As to the remaining six claims of misconduct, no objection was made and no admonition asked. Since none were so seriously prejudicial as to be beyond cure by admonition (see *People* v. *Perez*, 58 Cal.2d 229, 249-250 [23 Cal.Rptr. 569, 373 P.2d 617]), the issue has been waived (Witkin, Cal. Criminal Procedure, § 747). In any event, there was no miscarriage of justice. The experts' testimony linking defendant to the scene of the crime strongly corroborated the prosecutrix' positive identification of defendant as the rapist.

Judgment affirmed. Appeal from order denying new trial dismissed.

Salsman, J., and Devine, J., concurred.

A petition for a rehearing was denied April 5, 1965, and appellant's petition for a hearing by the Supreme Court was denied May 5, 1965.