[Crim. No. 145. · Fifth Dist.    Sept. 24, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT ARTHUR WESTER, Defendant and Appellant.

Carl P. Evans, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Raymond M. Momboisse and Anthony S. DaVigo, Deputy Attorneys General, for Plaintiff and Respondent.

CONLEY, P. J.—This case was before the court on the calendar for June 1965, and resulted in an opinion filed June 14, 1965. When the companion case, *People* v. *Robert L. Winkelspecht*, 5 Criminal 148, was placed on a subsequent calendar, the court noted from the brief of the appointed attorney in that case that he had raised certain defenses which had not been mentioned by counsel for the appellant in the *Wester* case, but which, in fairness, would, if sound, be applicable to both defendants. Accordingly, the court set aside the *Wester* opinion within the 30 days after filing within which it retained jurisdiction, and set both cases for hearing on the calendar for September 1965. We have fully considered the additional claims for reversal made in the *Winkelspecht*

case, which were joined in orally by counsel for the defendant in the *Wester* case, and have refused to reverse the *Winkelspecht* judgment on any of these grounds, as noted in the opinion in that case (*ante*, p. 227 [46 Cal.Rptr. 697]). The same observations relative to these additional points urged for a reversal in the *Winkelspecht* case are equally applicable to the *Wester* case, and, accordingly, are adopted with respect to this defendant's appeal.

Apart from the foregoing considerations, the points raised by the defendant, Wester, are covered in the same manner as in the former opinion of this court, which, as above stated, was previously set aside. Accordingly, we dispose of these points by the identical wording used in the previous nullified opinion, as follows:

Robert Arthur Wester, after conviction of a felony in the County of San Diego, was incarcerated at Folsom as a recidivist; he nevertheless earned the confidence of the authorities to the extent of winning an assignment to the outdoor crew of prisoners at the California Conservation Center at Susanville. From there, he was transferred to Camp 16 at Beaver Creek, a conservation camp of said institution, where he remained under the general custody of the superintendent of the California Conservation Center and the local custody of the officials in charge of Camp 16. He engaged in the healthy outdoor exercise incidental to a prisoner's life in the camp, and enjoyed the salubrious climate of the High Sierras while thus doing constructive work for the community and looking toward a hoped-for rehabilitation. However, on the 9th day of July, 1964, he and a fellow prisoner named Winkelspecht disappeared from the area of the Calaveras Big Trees in Tuolumne County where the conservationists were working, and an intensive search by the authorities failed to locate either of the prisoners on that day.

The defendant was finally apprehended by Frederick Joseph Kern, Deputy Sheriff of Calaveras County, and Lieutenant Frank F. Mendozo of the State Department of Corrections, on July 11, 1964, at 12:30 a.m., after a painstaking search of the mountainous area. The defendant was alone and walking along the highway at Hanford Hill, some 5 or 6 miles from the point where he had previously been detailed to work for the Forestry Service.

Deputy Sheriff Kern testified that Lieutenant Mendozo and he were patroling the roads at Hanford Hill when they saw this person on the shoulder of the highway; the two officers got out of the car, but the pedestrian then said nothing to

them. Frank Mendozo testified that it was so dark that when he first saw the man he did not know whether he was coming from behind a shelter by the side of the road or was headed toward the road; as the beam of the headlights hit him, he turned toward the car and that was the first time Mendozo got a fairly clear look at him. Mendozo testified that when the deputy stopped the vehicle the pedestrian ''kind of headed out toward the car like he was trying to get a ride and recognized the car.'' The officers called him over to their automobile and then observed his clothing in the focus of the car lights. When the man came up to them, they asked him where he was going and he said, ''Stockton.'' They asked his name, and in reply he gave what later proved to be a fictitious name; when he came close to the automobile and they saw him clearly, they were more certain of the identification; they searched the suspect in the light, compared the picture they had of the escaped prisoner with the man in front of them, and then positively identified him as Wester; they radioed the other units of the searching party who notified Lieutenant Johnson.

The defendant was held to answer at his preliminary examination and was charged with escape, a felony (Pen. Code, § 4530, subd. (b)), by an information filed in the superior court. The defendant was represented in the court below by successively appointed counsel, and on the appeal by an experienced attorney named by this court.

The defendant makes three claims for the reversal of the judgment against him: First, he alleges that it was error, at the preliminary examination in the Second Judicial District of Tuolumne County, to admit evidence of certain admissions made by him to Lieutenant Johnson after his arrest, contrary to the principles enunciated in *Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977] and *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]; he had not then been advised that he could remain silent and that he had a right to the services of an attorney in connection with the taking of his statement; secondly, it is claimed that error was committed when the superior court denied a motion to set aside the information; thirdly, it is urged that the trial judge gave a prejudicially erroneous instruction relative to the crime of escape.

■ Testimony given at the preliminary examination is not evidence upon the trial of the case itself, and no reversal can now be based upon evidence taken before the magistrate

prior to the filing of an information. (*People* v. *Dutton*, 27 Cal.App.2d 364 [80 P.2d 1003].) ■ When a defendant is first arraigned in the superior court, he may move to set aside the information on the grounds specified in section 995 of the Penal Code; such a motion must be made before a defendant demurs to the information, or pleads to the charge, and if he does not avail himself of his rights under that section he is deemed to have waived them (Pen. Code, § 996; *People* v. *Gomez*, 209 Cal.App.2d 187, 195 [26 Cal.Rptr. 54]; *People* v. *Ahern*, 113 Cal.App.2d 746, 750 [249 P.2d 63]; *People* v. *Brown*, 72 Cal.App.2d 717, 719 [165 P.2d 707]).

■ Defendant was arraigned and entered his plea of not guilty on July 24, 1964; the trial date was fixed for August 20, 1964, but it was thereafter continued twice—to September 21, 1964, and to October 26, 1964. It was on the latter day that appellant made a motion to set aside the information; he did not comply with the requirements of the law as to the time when an objection, under Penal Code sections 995 and 996, should be made. It is, therefore, apparent that his present objection to evidence received at his preliminary examination is wholly without substance.

■ At the trial of the case, Lieutenant Johnson was not asked to testify about the admissions the defendant made to him after his apprehension. However, there was testimony at the trial by Deputy Sheriff Kern and Frank F. Mendozo relative to meeting the defendant at Hanford Hill in the early morning of July 11, 1964, and it is suggested by appellant that the receipt of this testimony also was a breach of the constitutional rights of the defendant to remain silent and to have an attorney present at his questioning. The point is not well taken, because the defendant was not then under arrest for the crime of which he was later convicted, and he was simply asked where he was going and what his name was. All of the basic elements necessary for the invocation of the protection of the bill of rights as discussed in the *Escobedo* and *Dorado* cases, *supra*, were thus not present. ■ Prior to an arrest, the mere asking a defendant's name and destination is not a violation of his constitutional rights. ■ And even if it were considered necessary before requesting an unidentified person in the dead of night for his name and destination that peace officers should first tell him that he did not have to answer and that he could have an attorney present if he wished, the evidence here of what took place prior to the arrest could not possibly constitute a prejudicial violation of the constitutional rights of the defendant. (*People* v. *Hillery*,

62 Cal.2d 692, 711-713 [44 Cal.Rptr. 30, 401 P.2d 382]; *People* v. *Ulibarri,* 232 Cal.App.2d 51, 55-56 [42 Cal.Rptr. 409]; *People* v. *Campbell,* 232 Cal.App.2d 712, 714-715 [43 Cal.Rptr. 71].)

■ The second point urged is closely allied with the first. It is contended that the court should have set aside the information even though such a motion was made at an improper time and not in accordance with the plan for criminal procedure set up in the Penal Code. Defendant's counsel in the trial court were under a duty to comply with the requirements of the law concerning the time and method of making a motion to set aside the information; as they failed to do so, appellant cannot now complain of the ruling of the court upon the appeal.

Finally, it is contended that the court erred by giving an instruction concerning the law relative to escape. The excuse urged by the defendant for disappearing from his assigned work was that he had been forced by his fellow prisoner, Winkelspecht, to desert his post, and that he was not really guilty of escape because what he did was the result of *vis compulsiva.*

After the jury had begun to deliberate, the court received, through the bailiff, a written message from the foreman, ''If an inmate is coerced into escaping but makes no effort to return after the coercion is relinquished, then is he then an escapee or are there two points to consider?'' The judge stated that unless the problem should become more acute, he would prefer for the jury to attempt to arrive at its verdict without requiring a direct answer to such a question. ■ However, the jurors persisted in their request, and the court composed and gave the following instruction: ''If an inmate has departed the limits of his custody while influenced so to do by threats or menaces which create in his mind a fear of imminent and immediate danger and which are sufficient to show that he has reasonable cause to believe that his life will then and there be endangered if he refuses to so depart from the limits of his custody, and if he then believes that his life will be so endangered, he does not commit the crime of escape by such departure.

''By the same token, his involuntary departure does not free him from legal custody and he is at all times while acting under such influence, a prisoner, in contemplation of the law.

''If, however, the threats or menaces are removed and he is no longer under such influences to the end that he no longer believes that his life is then imminently and immediately

endangered, a further, continued, wilful and intentional departure from the limits of custody by him will constitute the crime of escape."

Section 1138 of the Penal Code provides that after the jurors have retired to deliberate, if they desire to be informed on a point of law arising in the case, they should require the officer to conduct them into court, and the requested information must be given to them in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel (*People* v. *Malone,* 173 Cal.App.2d 234, 244 [343 P.2d 333]); the court, also, has the inherent right on its own motion to recall the jurors for further instructions. (*People* v. *Hewitt,* 11 Cal.App.2d 197, 199 [53 P.2d 365].)

The instruction given by the court is sound. It is conceivable, although it would be most unusual, that a puny prisoner might fear for his life if a fellow convict demanded that he escape with him and backed the demand with threats of physical violence. While the contemplation of such an eventuality strains the imagination, such a situation might possibly arise; but, if so, the prisoner who was thus escaping against his will would owe a duty to use reasonable efforts to render himself again into the custody of the law enforcement agency at the first available opportunity. The instruction states good law; it was properly given in the circumstances.

The attempted appeals from the orders denying probation and a new trial are dismissed.

The judgment is affirmed.

Brown (R. M.), J., and Stone, J., concurred.