# HANLEY ROYSTON BOOTH v. STATE.

No. A-9862.   Oct. 8, 1941.
(118 P. 2d 274.)

Mitchell & Mitchell, of Clinton, and Moman Pruiett, of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Milton Keen, Co. Atty., of Clinton, for defendant in error.

JONES, J.   The defendant, Hanley Royston Booth, was charged in the district court of Custer county with the crime of obtaining money by false pretenses, was tried, convicted, and sentenced to serve one year in the State Penitentiary, and has appealed to this court.

The assignments of error will be discussed in the order in which they were presented in the defendant's brief.

It is first urged that the information is insufficient to charge the offense of obtaining money under false pretenses or to give the court jurisdiction to try said cause.

No demurrer was interposed to the information, and no motion in arrest of judgment was ever filed; but the question now presented by counsel for defendant is raised for the first time on appeal.

We have held that where an objection to the sufficiency of an information is raised for the first time upon appeal, the only question that will be considered is whether the facts stated in the information are sufficient to charge a public offense, so as to give the court jurisdiction to try the defendant. Rhodes v. State, 58 Okla. Cr. 1, 49 P. 2d 226; Franklin v. State, 17 Okla. Cr. 348, 188 P. 686, Stone v. State, 12 Okla. Cr. 313, 155 P. 701.

The purpose of requiring the defendant to interpose his objection to the information before pleading to the merits of the case is to allow the county attorney to make such amendments as may be proper in case a defect is disclosed.

We have examined the information herein and find that it alleges in substance that the defendant, Booth, did unlawfully, wrongfully, falsely, feloniously, etc., represent to one Elsie Nuse that he was a peace officer from Oklahoma county and had authority to arrest her for a misdemeanor committed in Oklahoma county, and that he would arrest her unless she paid $115 to him; that by the use of such representations of being a peace officer and of having authority to arrest the said Elsie Nuse, the said Booth obtained $115. The information further alleges that said representations were false and untrue; that defendant knew the same to be false and untrue, and that the said Elsie Nuse relied upon said false representations

and delivered to Booth the sum of $115, and that Booth used the said false pretenses with the intent to defraud the said Elsie Nuse; that Elsie Nuse relied upon said false pretenses, and was thereby deceived and defrauded of her said money.

This information is sufficient as against the attack now made for the first time on appeal.

The most serious question presented in the brief of the defendant is that the verdict is not sustained by the evidence, and is contrary to law for the reason that the alleged misrepresentations were oral, and there was no additional witness to the representations as required by the statute, and no corroborating circumstances.

Elsie Nuse, the prosecutrix, testified that she lived at Clinton and worked at the Kemp Hotel. That she did not know defendant, but met him for the first time on September 4, 1937, when he came to the hotel. She saw him first in the lobby, around 10 o'clock, a. m. The defendant showed her a police picture of her, and stated that he was an officer from Oklahoma county, and that he had come to take her back to Oklahoma City on an old charge of being drunk and disorderly conduct; that defendant went with her to get her hair dressed, and stayed there at the beauty shop 20 or 25 minutes; that the witness said she had some money in the bank and would like to take it to her mother, so that her mother could send her little girl to school while she was away. The defendant and witness went to the bank together, and the witness withdrew $125 from the bank, which closed her account. That they went to a drugstore to drink a coke, and the defendant proposed that if she would give him $200 he would not take her back to Oklahoma City; that she finally agreed to give him $115, and handed him the money under the table in the drugstore. That witness, later that day, re-

ported the incident to the manager of the hotel, who in turn consulted an attorney, and this prosecution was instituted.

A. T. Wheeler testified that he was vice president of the Oklahoma National Bank at Clinton; that on September 4th defendant and Elsie Nuse came to his bank; that defendant remained up front at his desk, and Elsie Nuse went to the back and drew out her savings account in the sum of $125. The same testimony, in substance, was given by the lady who worked as cashier at the window where the money was withdrawn.

An employee of a drugstore testified that the defendant and Elsie Nuse came into the Ross drugstore on September 4th, had a drink, and stayed five or ten minutes.

Another drugstore employee testified that defendant and prosecutrix came into the Marclif Drugstore, where prosecutrix inquired as to any bills she might owe so that she might pay the same.

Allman Russell testified that he was a deputy sheriff of Custer county, and served a warrant on the defendant at Lake Overholser, in Oklahoma county, and arrested him and brought him to Arapaho; that the defendant was at the boathouse. Defendant stated that he did not know Elsie Nuse and had never been to Clinton, and wanted to make bond and not return to Clinton. Later, defendant admitted being to Clinton. This witness testified that the defendant said he had been in the boat business at Lake Overholser for about two years, and that he was not a peace officer. Without objection on the part of defendant's counsel, this witness then relates a series of things that he learned in Oklahoma City about the defendant. These statements were all hearsay and prejudicial, and

should not have been made; but they were admitted without objection.

A porter at the Kemp Hotel reported that he saw the defendant in the hotel around 7:00 o'clock on the morning of September 4th, and that later that morning he saw him come across the street from the drugstore with Miss Nuse.

The defendant testified in his own behalf that he was now in the business of operating boats at Lake Overholser, and had been for two and one-half years. That he had never been an officer. That he had at one time been a professional bondsman at the police court in Oklahoma City. That he knew the complaining witness, but did not know her by the name of Elsie Nuse. That many years ago, he had been called to police court where Elsie Nuse and a negro had been arrested for occupying a room for immoral purposes. That he was asked to make their bond, but did not make it. That he knew all of the gamblers, prostitutes, bootleggers, and other criminals in Oklahoma City. That the prosecuting witness was just a negro loving prostitute. That he came to Clinton on September 4, 1937, to see about putting a boat on the Clinton Lake. That he came back by the coffee shop at the Kemp Hotel and saw the girl that he knew as Margaret Carter, which is the same girl as Elsie Nuse. That they had a conversation in the coffee shop, in which he told her that he was there looking over the lake. That she wanted him to take a letter to the negro in Oklahoma City with whom she had been arrested, and that he refused to do so, and shamed her for writing a letter to a negro. The defendant then, without any objection on the part of the state, lays all of his troubles on the Oklahoma City police department and the newspaper at Oklahoma City, and states that they had had him whipped once and that they were behind this prosecution be-

cause he had tried to clean up the police department of Oklahoma City.

It is well for us to observe here that there were no objections made to any of the things, which any of the witnesses for either the defendant or the state wanted to state, by counsel for the defense or the state; and the record stinks with voluntary, hearsay statements on matters wholly irrelevant to the issues involved. In justice to the learned counsel who appeared before this court, we deem it proper to state that they did not appear and had no part in the proceedings on the trial of said case.

In rebuttal, the state called Roger Hamilton, who testified that he was working at the Kemp Hotel in August; that sometime during that month, about 8:30 at night, the defendant drove up in front of the hotel, asked for Elsie Carter, and gave a description of the woman who worked there, whom he knew by the name of Elsie Nuse. That Elsie Nuse was not at the hotel at that time, but was in Bridgeport; and he informed the defendant of this. Defendant left and said that he would be back later.

Section 3072, O. S. 1931, 22 Okla. St. Ann. § 743, provides as follows:

"Upon a trial for having, with an intent to cheat or defraud another designedly, by any false pretense, obtained the signature of any person to a written instrument, or having obtained from any person any money, personal property or valuable thing, the defendant cannot be convicted if the false pretense was expressed in language unaccompanied by a false token or writing, unless the pretense, or some note or memorandum thereof, be in writing either subscribed by, or in the handwriting of the defendant, or unless the pretense be proven by the testimony of two witnesses, or that of one witness and corroborating circumstances. But this section does not apply to prosecution for falsely representing or personating another, and

in such assumed character, marrying or receiving money or property."

It is conceded by the state that the representations made by the defendant were oral, and that there were no witnesses to the same other that the prosecutrix; but it is insisted that the corroborating circumstances are sufficient to uphold the conviction.

A consideration of this evidence shows that the witness, Elsie Nuse, relates facts sufficient to make a prima facie case against the defendant.

We then have these corroborating facts established:

(1) Defendant came to Clinton in August, looking for Elsie Nuse.

(2) Defendant was at the Kemp Hotel by 7 a. m., September 4th, looking for Elsie Nuse, and waited in the lobby until she appeared about 9:45 a. m.

(3) The evidence from witnesses at the beautyshop, the two drugstores, and the bank shows that Booth stayed with Elsie Nuse until nearly noon.

(4) The proof shows that Booth waited in the beauty parlor, while the prosecuting witness was getting her hair fixed, for approximately 25 minutes. This incident is significant as supporting the testimony of Elsie Nuse that she thought that she was under arrest and in custody of an officer, as we deem it very unusual that a man would accompany a woman to a beauty parlor and sit for 25 minutes while she is getting her hair dressed.

(5) The fact that Booth did not let prosecutrix out of his sight at the bank, and that prosecutrix withdrew all of her money, is a circumstance tending to corroborate her statement that she thought that she was leaving Clinton.

(6) Booth and the prosecuting witness went to the Ross Drugstore, where she inquired if she owed a bill, and stated she wanted to settle any debts that she might owe. This is just a small circumstance which corroborates her statement that she was being forced to leave Clinton and was wanting to settle her debts before she left.

(7) The fact that defendant first told the officers of Custer county that he had not been to Clinton, and did not know prosecutrix, but later changed his story to admit that he had been to Clinton and knew prosecutrix, but knew her under another name.

We think that, when these circumstances are considered together, they amount to a sufficient corroboration of the story of the prosecutrix, and deem them sufficient to comply with the requirements of section 3072, supra.

The defendant, by his own testimony, admits being at the various places with the prosecuting witness on September 4th, and his explanation of the purpose of these trips was hardly worthy of belief. In fact, if the jury had believed the story related by defendant, it would have been very gullible.

The last contention of the defendant is that the court did not give sufficient instructions to properly present the material issues to the jury. In connection with this assignment, it is not urged that the court erred in the wording of any of the instructions which were given; but it is argued that the court should have given an instruction setting forth the terms of the statute requiring corroboration of a witness where the representations relied upon are oral.

In this connection, however, the record reveals that no requested instructions were presented to the court. We have examined the instructions which were given; and, in

the absence of any requested instructions, we think they are sufficient to submit the issues to the jury for their determination.

The judgment of the district court of Custer county is accordingly affirmed.

BAREFOOT, P. J., and DOYLE, J., concur.