Thomas E. BRADSHAW, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–17952.

Court of Criminal Appeals of Oklahoma.

May 23, 1973.

As Corrected June 5, 1973.

Bruce Green, Muskogee, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., Kenneth L. Delashaw, Jr., Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Thomas E. Bradshaw, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Muskogee County, Case No. CRF–71–134, for the offense of Obtaining Property by False Pretense. He was sentenced to serve a term of ten (10) years in the State Penitentiary and a five thousand dollar ($5,000) fine, and a timely appeal has been perfected to this Court.

The State's first witness, Stella C. Holland, testified that during the last of August or early September 1970, she entered into a business arrangement with a one Mr. Davidson and the defendant. The defendant and Mr. Davidson approached her at her apartment in Muskogee selling fire alarm systems. The two returned to her apartment several times and the defendant seemed to be the spokesman of the two. Mrs. Holland testified that the pair wanted her to sell her AT&T stock and to go into the fire alarm business with them. She

was to receive two hundred dollars ($200) a month, guaranteed. The pair never related to her the name of the business, but stated they had offices in San Francisco and New York. The defendant took her to her bank and secured from her safety deposit box all of her shares of stock and returned to her home and took the stock to Tahlequah. The next day after the stock had been sold the defendant related to her that she had only seventy-seven shares of stock.

Mrs. Holland then identified a contract which she had executed providing for an investment of four thousand dollars ($4,000). She then testified that defendant came by her house each month and gave her two hundred dollars ($200) each time until a total of eight hundred dollars ($800) was paid to her. She did not see the defendant after that, but one day after the charges had been filed, the defendant called her and requested that she drop the case "because he did not want to go to jail."

Mrs. Holland went on to relate that she gave the defendant all the money she had, including a check for one thousand dollars ($1,000).

Mrs. Holland then identified a money order issued by the First National Bank of Tahlequah for four thousand four hundred twenty-six dollars and seventy-seven cents ($4,426.77) payable to her, but she could not identify her signature and related she never received the money.

Finally, Mrs. Holland testified that she gave the defendant her AT&T stock on the basis of the contract she had entered into.

Thomas R. Sherrill, a stock broker from Tulsa, testified that on August 26 or 27, 1970, his firm had sold one hundred ninety-seven (197) shares of AT&T stock as a result of a sale order placed by the First National Bank of Tahlequah. He identified two of the State's Exhibits as checks issued for the proceeds of the sale.

Robert Smith, cashier from the First National Bank at Tahlequah, identified the State's Exhibits as being checks issued by the Tulsa brokerage firm payable to the First National Bank of Tahlequah. He identified one check as being for four thousand four hundred twenty-six dollars and twenty-seven cents ($4,426.27) and one in the amount of four thousand two hundred ninety-seven dollars and thirty-nine cents ($4,297.39). The witness related that one check was payable to Stella Holland and the other a bank money order, with one being endorsed by Clifford O. Turk, a former officer of the First National Bank of Tahlequah.

Haskell Davidson next testified that around the last of August that he and the defendant had "come by information that Stella Holland was suppose to have some money and they thought they would go talk to her about it." Davidson related that he and the defendant had a "deal" on fire alarms and that "we were going to go and set her up." Davidson then identified both contracts introduced by the State. He related that both contracts were executed in Mrs. Holland's apartment in Muskogee. He then testified that they had contacted Mrs. Holland a couple of times and that "we got a thousand dollars off of her the first time and we went back and proceeded to get the stock." He testified that although the contracts disclosed that he and the defendant were affiliated with the Vanguard Fire Alarm System and Interstate Engineers, neither, however, were in any way associated with the company. As a part of the scheme, Davidson testified that they had advised Mrs. Holland they would pay her so much interest and a certain guaranteed monthly payment in return for the money she invested. Mrs. Holland was supposed to have invested approximately four thousand dollars ($4,000), but that "well we got around eighty-seven hundred dollars off of her all together." He and the defendant had planned to pay Mrs. Holland for a while in order to prevent her from getting suspicious. Davidson then testified that they had gone to Mrs. Holland's bank in Muskogee, procured the stock, and returned her to her apartment. He and the defendant proceeded to Tahle-

quah where he dropped the defendant off and proceeded on to Tulsa. The defendant advised him that Clifford Turk, an officer of the First National Bank of Tahlequah, was a good friend and would take care of the stock for them. He returned to Tahlequah at a later time and testified that the defendant came out of the bank with the money in question, wherein both split the proceeds amounting to approximately eight thousand dollars ($8,000), but they had to give Turk five hundred dollars ($500) to handle the deal. Davidson then testified that he took the check payable to Stella Holland, went to Muskogee, and asked the victim to "re-sign" the contracts. When she signed the contracts, he placed the check under the contracts so that when she signed the contract, she also endorsed the check. He did not show the victim the check nor tell her about it and thereafter, he proceeded to Tahlequah with the instrument and relinquished the same to the defendant.

Leona Hipp, an employee of the First National Bank of Tahlequah, testified for the defendant. She identified Defense Exhibit Number 3 as being a receipt given to Mrs. Holland for one hundred ninety-seven (197) shares of AT&T stock with a date thereon of August 19, 1970. The witness recalled the transaction at the bank, but did not remember seeing Mr. Bradshaw in Turk's office on that date. She did, however, note that the receipt was made to someone living at Box 87, Park Hill, Oklahoma, but had no recollection as to who resided therein.

Clifford Turk, a former vice-president of the First National Bank of Tahlequah, next testified for the defendant. Turk related that he was acquainted with the defendant and recalled that Mrs. Holland had liquidated some AT&T stock at his bank. He testified that Mrs. Holland was in his office and that the defendant waited outside in the lobby. He further testified that Mrs. Holland had given him a Park Hill address and that he had never received any money from anyone for the transaction.

On rebuttal, the State recalled Mrs. Holland back to the stand. She testified that at the time the stock certificates were executed the defendant was at Clifford Turk's desk with her. She further testified that she did not tell Turk her address was Park Hill and that she did not know where Park Hill was located.

█ The defendant under his first proposition asserts that the trial court erred in failing to dismiss the case at the close of the State's evidence and at the close of the trial for the reason that there was no corroboration of the communication of the alleged oral false pretense. Defendant cites as authority 22 O.S.1971, § 743, which states:

"Upon a trial for having, with an intent to cheat or defraud another designedly, by any false pretense, obtained the signature of any person to a written instrument, or having obtained from any person any money, personal property or valuable thing, the defendant cannot be convicted if the false pretense was expressed in language unaccompanied by a false token or writing, unless the pretense, or some note or memorandum thereof, be in writing either subscribed by, or in the handwriting of the defendant, or unless the pretense be proven by the testimony of two witnesses, or that of one witness and corroborating circumstances. But this section does not apply to prosecution for falsely representing or personating another, and in such assumed character, marrying or receiving money or property."

It is defendant's contention that the State's evidence failed to satisfy paragraph 743, supra, in that the alleged false pretense as stated in the Information was not corroborated in any manner. The above statute requires corroboration of an oral pretense by two witnesses or that of one witness and corroborating circumstances. We are of the opinion that the testimony of the accomplice corroborates the testimony of Mrs. Holland, and in turn, his testimony is corroborated by the contracts and

checks introduced in evidence. Further, there is an abundance of circumstantial evidence to corroborate both Mrs. Holland and the accomplice's testimony. In the case of Booth v. State, 73 Okl.Cr. 85, 118 P.2d 274 (1941) this Court held in Syllabus 2:

"Upon a charge of obtaining money under false pretenses, where the alleged false representations are oral and there is the testimony of only one witness as to the transaction, but there is testimony as to circumstances corroborating the story of such witness, the conviction will not be reversed for insufficiency of the evidence."

█ Under defendant's second proposition he asserts the trial court erred in failing to dismiss the case at the close of the State's evidence and at the close of the trial for the reason that venue was in Cherokee County and not in Muskogee County.

Title 22 O.S.1971, § 124 states:

"When a public offense is committed, partly in one county and partly in another county, or the acts or effects thereof, constituting or requisite to the offense, occur in two or more counties, the jurisdiction is in either county."

In the instant case the record reveals that the defendant made representations to Mrs. Holland in Muskogee County and the stock certificates were originally delivered to the defendant in Muskogee. Further, the check representing the proceeds of the excess certificates was endorsed in Muskogee County. We therefore find no error in the trial court's ruling that venue was proper in Muskogee County.

█ Defendant's third proposition asserts that the trial court erred in failing to dismiss the case at the close of the State's evidence and at the close of the trial for the reason that the transfer of property alleged in the Information was not pursuant to a reliance on the alleged false pretense.

It is the defendant's contention that the "obtaining of the property" was not made without compensation to Mrs. Holland and, the transfer of the property was not made due to a reliance on the false pretense. We do not agree.

In the case of Ireton v. State, 29 Okl.Cr. 266, 233 P. 771 (1925) this Court stated at page 773 of the opinion:

"The gist of the offense as above stated is the making of a false pretense and obtaining from another money or property which the other was induced to give up by reliance on such false pretense. Whether or not the false pretense really operated and was the inducing cause in obtaining the money is a question for the jury, and, unless the false pretense appears frivolous on its face, the court as a matter of law could not say that it was incapable of operating to induce one to part with money or property. The question is, not whether or not a prudent person would part with his money under the circumstances, but whether or not it was capable of and did deceive and induce the person defrauded to part with money or property . . . ."

Also, in the case of Smith v. State, 7 Okl. Cr. 136, 122 P. 732 (1912) this Court held in Syllabus 1:

"It is not necessary that the false pretense should be the sole inducement which moved the prosecutor to part with his money. It is sufficient if it materially contributed to this end, and that without the false pretense he would not have parted with his money."

We believe these are questions for the jury under a proper instruction. The record reveals the trial court gave the jury the following instruction:

"You are instructed that to constitute the crime of Obtaining Property by False Pretense, there must be a false representation or statement as to an existing fact or past event, made by the accused, or some one instigated by him, with knowledge of its falsity, with intent to deceive and defraud, and which is adapted to deceive the person to whom it is made; a reliance on such false representation or

statement; an actual defrauding; and an obtaining of something of value by accused or someone in his behalf, without compensation to the person from whom it is obtained.

"In the case on trial the 'something of value' is alleged in the Information to be 197 shares of AT&T stock belonging to Stella C. Holland."

We therefore find no merit in this proposition.

Defendant's fourth and fifth propositions assert error in the trial court instructions and error in the trial court failing to give defendant's requested instructions.

In the case of Barber v. State, Okl.Cr., 388 P.2d 320 (1963) this Court held in Syllabus 11 and 12:

"All instructions given by the trial court should be considered, and where they fairly and fully present the issues involved, and no fundamental error occurs whereby the defendant has been prejudiced or deprived of a substantial right, the case will not be reversed on appeal.

"It is not error for trial court in criminal prosecution to refuse defendant's requested instructions where substance of requested instructions is covered by given instructions."

In the instant case we have reviewed all of the instructions given by the trial court and believe they fairly and fully present the issues involved in the instant case. Further, we note that defendant's requested instructions were substantially covered in the trial court's instructions. We therefore find no merit in this proposition.

■ The defendant's sixth and final proposition asserts the trial court erred in failing to grant a mistrial due to improper closing arguments of the assistant district attorney.

The following statement was made by the assistant district attorney in his closing argument:

". . . You've heard the phrase, easy come, easy go. Why I'd a bet you a nickel that neither one of 'em had a penny thirty days after they walked off with that woman's ten thousand dollars, because it's motel and high living and Florida and New Orleans and Las Vegas and liquor and food and girls and motels, it's all gone. Easy come, easy go. Haskell Davidson got himself over four thousand dollars out of it and is smoking Prince Albert cigarettes and can't even buy a pack of cigarettes, and Thomas Bradshaw is the same way when he called her—listen, he bought him a new car with the money he got off of her, a new—"

"MR. GREEN: I object to this, your honor. There's nothing in the record concerning that, and move for a mistrial.

"THE COURT: The objection will be sustained. I don't believe there's any testimony—

"MR. GREEN: All right, and—

"THE COURT: —and the jury will not consider it. The Court admonishes the jury not to consider that statement.

In the case of Murff v. State, Okl.Cr., 379 P.2d 710 (1963), this Court held in Syllabus 7:

"An admonition to a jury not to consider the remarks of counsel usually cures an error unless it is of such a nature as, after considering the evidence, appears to have determined the verdict."

After careful review of the entire record, we cannot say that remarks of the assistant district attorney determined the verdict in the instant case.

For all of the foregoing reasons, we are of the opinion that the judgment and sentence appealed from should be, and the same is hereby, affirmed.

BRETT, J., concurs.

BLISS, P. J., not participating.