Ross JONES, Jr., Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–296.

Court of Criminal Appeals of Oklahoma.

Nov. 22, 1976.

Glenn E. Thompson of Thompson & Thompson, Poteau, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Ross Jones, Jr., hereinafter referred to as defendant, was charged, tried and convicted in the District Court, LeFlore County, Case No. CRF–75–42, for the offense of Escape from a Penal Institution, in violation of 21 O.S.1971, § 443. His punishment was fixed at three (3) years' imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, John Grubbs testified that he was the Classification Officer of the Ouachita Training Center in LeFlore County; that on March 27, 1975, defendant was an inmate of said institution pursuant to an Order revoking a suspended sentence; and that the records reflect that defendant was missing from the institution subsequent to March 27, 1975.

Sampson White testified that on March 27, 1975, he was a dorm counselor at the Ouachita Training Center; that he observed the defendant in the dormitory at 8:00 p. m. The defendant was missing from the dormitory at the 10:30 p. m. count.

James Welch testified that he was a Lieutenant in charge of Security at the training center on the night in question. A search was instituted and defendant and two other inmates were not found in the compound.

Hugh Gardenshire testified that he was the Chief of Security of the center. He received a telephone call in the morning hours of March 28th concerning the three inmates that were missing. He did not give defendant permission to leave the center and the defendant was returned to custody the following day.

Cebern Scott testified that he lived about three and one-half miles from the training center. He heard the defendant yell for help, that he was drowning on the afternoon of March 28th. Scott got a boat and rescued defendant from the river.

For the defense, co-defendant Thomas Bradshaw, testified that in approximately November, 1974, he was an inmate in Stringtown. He cooperated with the prison authorities in locating weapons hidden by a group of black inmates. He was transferred from Stringtown to avoid repercussions. Defendant came to the prison barber shop on the evening of March 27th and advised him that some blacks had threatened him. They were accosted by the blacks, armed with knives, as they left the shop. He and defendant had straight razors and were able to stand them off. The blacks left, stating that they would "take care of this right after the count." [Tr. 243] He and defendant left the center to avoid the confrontation.

Defendant's testimony did not differ substantially from the testimony of co-defendant Bradshaw. The blacks told him that they were going to kill Bradshaw and that he should stay out of it. He left because he did not want to get killed. He admitted convictions for Embezzlement, Federal Firearms violation, Federal Interstate Theft and Federal Escape.

Dale McDonald testified that he was serving a term in the State Penitentiary at McAlester for Murder; that it was common knowledge within the penitentiary that Thomas Bradshaw had turned in two pistols at Stringtown and that defendant had helped Bradshaw to keep some blacks from killing him. He further stated that there is a contract outstanding for the death of defendant because of his aid to Bradshaw.

Defendant asserts, in the first assignment of error, that the trial court erred in refusing to allow him to subpoena several witnesses which were necessary for the presentation of his defense. Defendant argues that the trial court's refusal to issue Writs of Habeas Corpus Ad Testificandum for incarcerated witnesses and to endorse subpoenas for out of county witnesses denied him a proper defense. The record reflects that the defendant informed the court that the witnesses would testify as follows:

". . . [T]hat as a result of these two defendant's assisting correctional officials in obtaining weapons that were secretly within the prison, the prison system, threats and overt attempts were made on the lives of these two defendants; that as a result of these threats and overt attempts to injure or kill the defendants, they feared for their lives and this was what motivated them to leave the compound at Hodgens." [Tr. 41–42]

■ We need only observe that said testimony, if presented, would not have constituted a defense to the charge of Escape. In *Grubb* v. *State*, Okl.Cr., 533 P.2d 988, we approved the following instruction:

" 'You are instructed that it is no defense to a charge of ESCAPE that the prisoner feared violence from third persons, and you shall not consider such evidence as a defense or in mitigation of punishment.' "

■ Defendant contends, in the final assignments of error, that the trial court erred in giving certain instructions and further erred in refusing to give a requested instruction. We have carefully examined the court's instructions and find that as a whole, they fairly and fully presented the issues involved. In *Turman* v. *State*, Okl.Cr., 522 P.2d 247 (1974), we stated:

"Further, the defendant alleges error in the court's 'failure to properly instruct the jury on fundamental issues and refusal to give defendant's proffered instruction.' It is a well settled rule in Oklahoma that the instructions given to the jury are left to the discretion of the judge, and that such discretion will not be interfered with as long as the instructions considered as a whole, fairly and correctly state the applicable law. *Barber* v. *State*, Okl.Cr., 388 P.2d 320 (1963); *Bradshaw* v. *State*, Okl.Cr., 510 P.2d 972 (1973). . . ."

■ In conclusion, we observe that the evidence of defendant's guilt is overwhelming and that the record is free of any error which would cause reversal or justify modification. The judgment and sentence is, accordingly, *AFFIRMED*.

BRETT, P. J., and BLISS, J., concur.