Dennis Wayne NICHOLS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–866.

Court of Criminal Appeals of Oklahoma.

May 20, 1977.

Robert F. Brandenburg, Jr., Norman, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Catherine Gatchell Naifeh, Legal Intern, for appellee.

## OPINION

BLISS, Judge:

Appellant, Dennis Wayne Nichols, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Cleveland County, Case No. CRF–76–131, for the offense of Escape From a State Penitentiary, in violation of 21 O.S. Supp.1974, § 443. His punishment was fixed at two (2) years' imprisonment. From said judgment and sentence a timely appeal has been perfected to this Court.

The State's first witness, J. B. McMakin, Records and Classification Officer at Lexington Treatment Center, identified State's Exhibit No. 1 as the judgment and sentence from Oklahoma County which referred to the defendant. He then visually identified the defendant as the prisoner to whom the judgment and sentence referred. McMakin next identified State's Exhibit No. 2 as a reception sheet used to verify the judgment and sentence with the defendant. On cross-examination McMakin testified that he could not read the seal of certification but could verify the certification.

The defendant's objection to the introduction of State's Exhibits Nos. 1 and 2 as not having been properly certified was overruled.

The State next produced E. J. McWhirter, who testified he was a correctional officer at Lexington Treatment Center. He identified State's Exhibit No. 3 as the orientation slip upon which he witnessed the defendant's signature. McWhirter identified the defendant as the person who signed the orientation slip.

The State's third witness was Shift Lieutenant Robert B. Noble of the Lexington Treatment Center. He identified the defendant as the former inmate of Lexington who was reported missing by the dorm officer on March 2, 1976. When he discovered that the defendant had not signed out of dorm, he began a search and then informed the emergency squad to start escape procedures. Noble was told by Cleveland County deputies that the defendant had been apprehended.

The State's next witness was Johnny Summers. As Lieutenant of Security he caused the bunk count to be instigated which determined that the defendant was absent. He then reported these results to Lieutenant Noble.

Cleveland County Deputy Ray Moody, the State's fifth witness, stated he was notified of the escape and began a search in an area where men dressed in prison garb had been seen. Moody, with the aid of Deputy Followwill, apprehended the defendant in an open field approximately ten miles from the institution.

The State's final witness, Deputy Sheriff Debs Followwill identified defendant as being the person he pursued on the day of the escape. Followwill stated that the defendant, upon seeing him, began to run and stopped only after a warning shot had been fired.

Thereafter the State rested.

Defense motions for demurrer and directed verdict were overruled.

Defendant testified in his own behalf, stating that he was incarcerated in Lexington for the offense of unauthorized use of a motor vehicle. He testified that he had reported homosexual activity which had dis-

turbed him to the prison authorities and as a result was considered an informer by other inmates. He stated that other unidentified inmates threatened to kill him when a weapon was obtained. The defendant observed one of these inmates with a knife and, fearing for his safety, fled the prison on the following day. Defendant stated he planned to turn himself over to authorities in Norman.

The second witness for the defense was Lieutenant Dutton of the Lexington Treatment Center. He identified the defendant as the person he was charged with protecting. Dutton stated the defendant had made complaints about his safety which Dutton was investigating.

John Lones, a counselor at the institution, testified he had worked with defendant and that the defendant was frightened by homosexual activity in the dorms and by the knives which had been discovered there.

Another counselor, James Conaster, identified defendant and stated that his investigation had corroborated defendant's story of homosexual activities in the dorm.

Donald White, an inmate at Lexington, stated that he was a friend of the defendant and had also been threatened by other inmates for reporting the homosexual activity. However, he did not find it necessary to escape the institution as a result of these threats.

The testimony of the final witness, Correctional Officer Ricky Allen, as to the prior discovery of knives was ruled irrelevant and immaterial, and was excluded.

Thereafter, the defense rested.

The defendant's first assignment of error asserts that the trial court erred in refusing to give his requested instruction on the defense of involuntary escape. The defendant's requested instruction, taken from the case of *People v. Wester,* Cal.App., 45 Cal. Rptr. 114 (1965), which defendant cites as support for his position, states

> "If an inmate has departed the limits of his custody while influenced so to do by threats or menaces which create in his mind a fear of imminent and immediate

danger and which are sufficient to show that he has reasonable cause to believe that his life will then and there be endangered if he refuses to so depart from the limits of his custody, and if he then believes that his life will be so endangered, he does not commit the crime of escape by such departure.

> "By the same token, his voluntary departure does not free him from legal custody and he is at all times while acting under such influence, a prisoner, in contemplation of the law.

> "If, however, the threats or menaces are removed and he is no longer under such influences to the end that he no longer believes that his life is then imminently and immediately endangered, a further, continued, wilful and intentional departure from the limits of custody by him will constitute the crime of escape."

This instruction was discussed by this Court in *Chester v. State,* Okl.Cr., 485 P.2d 1065 (1971), which held "the instruction used in *People v. Wester,* supra, at page 117, would be appropriate under a proper fact situation;" but that, as stated in *People v. Wester,* supra, "the contemplation of such an eventuality strains the imagination, . . . ."

It is apparent from the evidence that the instant case does not present such a fact situation. The defendant was not in imminent danger at the time of his escape and indeed, other inmates who had received the same threats perceived no need to escape. Also, rather than returning himself to lawful custody at the first opportunity, the defendant unsuccessfully attempted further flight when observed by law enforcement officers. In addition, in *Grubb v. State,* Okl.Cr., 533 P.2d 988 (1975), where the defendant also cited *People v. Wester,* supra, as authority for a similar requested instruction, this Court approved an instruction, stating:

> "'You are instructed that it is no defense to a charge of ESCAPE that the prisoner feared violence from third persons, and you shall not consider such evidence as a defense or in mitigation of punishment.'"

This instruction was also cited as authority in *Jones v. State,* Okl.Cr., 556 P.2d 1060 (1976), where on facts very similar to the present case this Court found no error in the trial court's refusal to subpoena defense witnesses who would testify as to threats made against defendant, since such testimony "would not constitute a defense to the charge of escape." Numerous cases from various jurisdictions have been cited previously in *Grubb v. State,* supra, for the proposition that "it is well settled law that conditions in prison afford no justification for escape." See also, *Stiner v. State,* Okl. Cr., 539 P.2d 750 (1975).

The instructions fairly and fully presented the issues involved, and as stated in *Turman v. State,* Okl.Cr., 522 P.2d 247 (1974):

".  .  .  It is a well settled rule in Oklahoma that the instructions given to the jury are left to the discretion of the judge, and that such discretion will not be interfered with as long as the instructions, considered as a whole, fairly and correctly state the applicable law.  .  ." (Citations omitted)

█ The defendant next asserts that the trial court erred in overruling the defendant's demurrer in that the State failed to prove that defendant was in lawful custody at the time of his arrest. As stated in *Conway v. State,* Okl.Cr., 483 P.2d 350 (1971), in a prosecution for the violation of 21 O.S.1961, § 443, "it is incumbent upon the state to set forth the reasons and grounds for which a defendant is legally incarcerated in the penal institution." However, in *Pickens v. State,* Okl.Cr., 530 P.2d 1369 (1975), we stated, "It is an accepted rule that this proof is satisfied by the introduction of the judgment and sentence upon which defendant was serving time at the time he was alleged to have escaped." Defendant contends that the certified copy of judgment and sentence introduced was insufficient since the seal was illegible. However, documents may be sufficiently authenticated by a sponsoring witness who can testify that the entries which appear upon the record are true. In this case the classification officer who was personally responsible for keeping the records on inmates testified under oath that State's Exhibit No. 1 was a copy of the judgment and sentence received from the District Court of Oklahoma County, as required by 22 O.S. 1971, § 980, and kept in the records office at the penal institution. This judgment and sentence, which under 22 O.S.1971, § 977, the court clerk is required to file, falls within the provisions of 12 O.S.1971, § 502, and 22 O.S.1971, § 702, which provide for the admission into evidence of books and records required by law to be kept by the court clerk. See also, *Brinlee v. State,* Okl. Cr., 543 P.2d 744 (1975), which held that even if prison records such as the reception sheet in the instant case could not be admitted under 12 O.S.1971, § 502, they could in appropriate circumstances be admitted under the common law concept of the business records exception to the hearsay rule.

█ Since we hold that such judgment and sentence was properly admitted as evidence, the defendant's final contention that the jury's verdict was contrary to the weight of the evidence is without merit. As we have stated numerous times, where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, since it is the exclusive province of the jury to weigh the evidence and determine the facts. See, *Brinlee v. State,* supra.

For the above and foregoing reasons the judgment and sentence appealed from is, hereby, *AFFIRMED.*

BUSSEY, P. J., and BRETT, J., concur.