Judy Ellen HOLBIRD, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–81–697.

Court of Criminal Appeals of Oklahoma.

Aug. 24, 1982.

Douglas W. Sanders, Don Sullivan, Poteau, for appellant.

Jan Eric Cartwright, Atty. Gen., Susan Talbot, Asst. Atty. Gen., Chief, Appellate Criminal Division, Oklahoma City, for appellee.

## OPINION

CORNISH, Judge:

Appellant, Judy Ellen Holbird, was convicted in the District Court of Latimer County for the offense of Robbery with Firearms. Her punishment was fixed at six (6) years' imprisonment.

On June 3, 1979, an individual, wearing a nylon stocking mask, approached Jim Prock, an employee of Ray's Cardinal Food Store, and grabbed his arm. Mr. Prock was sweeping the walk in front of the store in preparation for closing time at 7:00 p. m., but the person stuck a hard object into his back and ordered him into the store.

After entering the store, the individual brandished a white, pearl handled .22 revolver and commanded Prock to tell the assistant manager, Charles Watkins, to take the money from the cash registers. Once the registers were emptied, Mr. Watkins was then ordered to retrieve any money from the store's safe. The robber then gave Jim Prock a shove, warned everyone in the store to remain there for five min-

utes, and then left the store with $11,548.04 in cash.

Antecedent to this robbery, Vanessa Jones and her husband had purchased groceries from the store. While exiting the grocery store they observed a female standing east of the building. She had pulled a nylon stocking from her nose and her forehead and, as a consequence, her identity was briefly revealed to Mr. and Mrs. Jones. Both witnesses identified this woman as the appellant in open court. Further testimony revealed that appellant was standing near a brown Ford Mustang, which had an inspection sticker for the month of May, that another female was sitting on the passenger side of the vehicle, and that the woman outside the car had a turquoise and silver ring. Evidence was later introduced that appellant owned a brown Ford Mustang and a silver and turquoise ring.

The appellant gave her boots to authorities on the day of her arraignment, and Janice Barnhill, a store employee, identified the boots as those worn by the robber on June 3, 1979.

The robbery had occurred in Wilburton, Oklahoma. However, as of June 11, 1979, the appellant was residing in Ft. Smith, Arkansas. Robert Skimbo, Chief of Police of Wilburton, and Noah Kennedy, an investigator for the district attorney in Latimer and LeFlore Counties, went to Ft. Smith. With the aid of Bob Hatfield, a Ft. Smith detective, Skimbo and Kennedy visited appellant on June 11, 1979. The officers advised her of her *Miranda* rights and then photographed appellant and her car. Appellant claimed to have been on a picnic in Mulberry, Arkansas on June 3, 1979, and she denied owning a pistol of any kind.

After a felony arrest warrant was issued for appellant, on June 13, 1979, the two Oklahoma officers went to appellant's apartment again, because a polygraph examination had been scheduled for her. The warrant for her arrest was not executed at this time, but she accompanied the officers to Poteau, Oklahoma in order to submit to the polygraph examination. Appellant's *Miranda* rights were read to her once again

before the examination, and she signed a written waiver of her rights after being placed under arrest pursuant to the warrant.

Appellant thereafter stated she had forgotten to tell the officers she owned a .22 pistol, but it could be found in her purse back in Ft. Smith, Arkansas. She signed written consent forms to search her automobile and apartment which resulted in the discovery of a pearl handled .22 caliber pistol, money order receipts for approximately $1,500.00, and utility receipts for over $300.00. All these expenditures, including over $800.00 in cash paid for auto repairs, indicated that she had spent nearly $2,600.00 within the few days following the June 3rd robbery. Testimony revealed that she had not worked regularly in the month preceding the robbery, and that work as a waitress could occasionally net her tips of up to $50.00 a night in addition to her fixed wages of $1.75 to $3.00 per hour.

Carl Pitchford concluded the State's case by testifying he had seen the appellant's daughter drive quickly out of town on the date of the robbery. The daughter was driving a dark colored Ford Mustang, and another woman accompanied her.

The State then rested its case, and the appellant elected not to present any witnesses or evidence on her behalf.

I.

Appellant initially contends the State failed to prove the material elements of Robbery with Firearms beyond a reasonable doubt and, therefore, the trial court incorrectly overruled her motion for a directed verdict. There was sufficient evidence, although circumstantial, to support the jury's verdict. A review of the record reveals the existence of eyewitness testimony describing the robber; testimony that appellant owned a ring and automobile quite similar to the ring and car used by the woman who robbed the store; in-court identification of appellant; and a comparison of an unexplained series of large cash expenditures by appellant shortly after the date of the robbery.

Where, as here, there is competent evidence in the record from which the jury could reasonably conclude that appellant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, because it is the exclusive province of the jury to weigh the evidence and determine the facts. *Nichols v. State,* 564 P.2d 667 (Okl.Cr.1977).

■ This Court will not reverse a conviction which was based upon legally sufficient evidence. When the State's evidence is entirely circumstantial, as in the instant case, then "legally sufficient evidence" means the proven facts need not be such as to exclude every hypothesis or negate any other possibility than guilt, *Luker v. State,* 552 P.2d 715 (Okl.Cr.1976); but they must be such as to exclude every reasonable hypothesis or conclusion, except that of guilt. *Gray v. State,* 561 P.2d 83 (Okl.Cr.1977).

■ We are of the opinion that the evidence presented by the State was sufficient to meet this burden.

## II.

The appellant next alleges the trial court erred in overruling her motion to suppress evidence obtained from her residence, because the items were recovered pursuant to an invalid consent to search form.

■ The trial court must look to all of the facts and circumstances surrounding the giving of the consent to search to determine whether it was voluntarily given and not the result of duress or coercion. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Appellant correctly maintains that the State has the burden of proving the voluntariness of such consent. *Case v. State,* 519 P.2d 523 (Okl.Cr.1974).

The Supreme Court in *Schneckloth,* supra, 412 U.S. at 227, 93 S.Ct. at 2047, held that while knowledge of the right to refuse consent to a search is one factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establish a voluntary consent. This holding was limited to consents given in non-custodial situations, with the Court declining to determine what effect custodial conditions might have on a search authorized solely by an alleged consent. 412 U.S. at 247, n. 36, 93 S.Ct. at 2058, n. 36.

■ The appellant complains that oral warnings of her rights were not given at the time she signed the consent forms. Language on the consent forms which she signed did recognize the right to refuse to consent to the search. The appellant's testimony at an *in camera* hearing for determination of the voluntariness of her consent further revealed that immediately after hearing one officer remark to another that they needed a search warrant, she interjected that a search warrant was not necessary, and then told them the exact location in her apartment of the gun and whatever money she had. This oral consent had also been twice preceded by *Miranda* warnings that morning. It therefore appears that the voluntariness of this spontaneous consent was not dependent upon her having been advised that she need not consent to a search.

The Oklahoma authorities who transported appellant from Arkansas did not advise her that they had a warrant for her arrest, nor did they serve her with the warrant until after a polygraph examination at police headquarters in Poteau, Oklahoma. A careful review of the record, however, fails to disclose any effect this or the impropriety of going outside of Oklahoma jurisdiction had on the voluntariness of appellant's consent. In fact, the appellant testified that she was acquainted with some of these officers, that her former husband had been a police officer, and that she was never afraid of the policemen at this time. Additionally, her cooperativeness, evidenced by her previous repeated waivers of *Miranda* rights further indicates knowing and intelligent voluntariness. The totality of the circumstances show that the consent to search was an act of her voluntary and free will and not the product of duress or coercion, either express or implied. Having been preceded by the appellant's free and voluntary consent, the warrantless searches were not unreasonable. *Holmes v. State,* 568 P.2d 317 (Okl.Cr.1977).

### III.

The final issue for determination is whether the evidence obtained through appellant's arrest should have been suppressed. Appellant claims her arrest was illegal, because the Oklahoma officers traveled outside their jurisdiction to arrest her in Arkansas. As a consequence, it is contended that the gun, receipts, pictures and oral statement of appellant should have been suppressed.

■ Generally, a warrant of arrest cannot be executed in another state if it was issued in Oklahoma, for it has no validity beyond the boundaries of the state of whose authority it was issued. See *Kirkes v. Askew*, 32 F.Supp. 802 (E.D.Okl.1940). The Uniform Criminal Extradition Act found in 22 O.S.1981, § 1141.1 et seq., provides specific procedures to be followed for the arrest and return of a criminal suspect who is outside the jurisdiction of this State. Where authorities comply with this Act, the risk of rendering inadmissible evidence seized due to the illegality of an arrest is minimized. The authorities here bypassed these procedures in an expedition the trial court characterized as "trickery" in regaining jurisdiction over the appellant.

■ There is some doubt as to whether the police officer's conduct at the appellant's apartment in Ft. Smith on June 13 amounted to an arrest. To constitute an arrest, there must be some actual restraint of an individual's freedom of movement or an attempt to take him into custody. The impression made on the person claiming to have been detained is a relevant factor to be considered in determining whether he was arrested. *Holmes v. State*, supra. The Oklahoma officers did in fact travel to Arkansas in order to find the appellant, but she was cooperative and agreed to accompany the officers back to Oklahoma to submit to a polygraph examination. There was some evidence that she had ridden in the police car because hers was not then available, and that she had been told she would be driven back to Ft. Smith afterwards. Testimony illuminating how the appellant perceived her situation came when she was asked if her statements had been voluntary. To this she replied, "yes, but I didn't know that I was going to be arrested for a crime."

On the other hand, Officer Noah Kennedy testified that had she said she would not return to Poteau voluntarily, he would have arrested her in Arkansas. Wilburton Chief of Police Robert Skimbo, who had accompanied Kennedy, stated at the *in camera* hearing that he would have allowed the appellant to return to Arkansas if during the ride she had asked to be let out of the car. But later in open court he testified that had she refused to return to Oklahoma he would have arrested her. These officers' testimony would indicate that the appellant would not have been free to leave without being impeded by the police. Compare *Hill v. State*, 500 P.2d 1080 (Okl.Cr.1972). Whether these subjective intentions of the officers were impliedly or expressly communicated to the appellant is unclear.

■ Even assuming that the initial arrest was illegal, the original taint of impropriety may be removed by intervening circumstances. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The threshold question in such a case would be whether the challenged evidence had been obtained by exploitation of the original illegality or by means sufficiently distinguishable to be purged of the primary taint. *Babek v. State*, 587 P.2d 1375 (Okl. Cr.1978). In evaluating the circumstances of this case we find that sufficient intervening factors exist to purge any taint originating from the conduct of the officers. See *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). The officers did not obtain the evidence from appellant's apartment simply by arresting her and conducting a search immediately. The appellant's home was not searched until several hours subsequent to her arrest, and this search was not conducted until appellant had executed a valid consent to search. Appellant had agreed two days in advance to submit to a polygraph examination, although the test was originally scheduled to be given in Ft. Smith. Appellant expressed herself that she had not been threatened,

coerced, or forced to talk; that she on her own initiative told Officer Kennedy, whom she said had been her friend of two years, that a search warrant was not necessary; that she had had no fear of the officers; and that at the time she had seen no reason for not taking the polygraph examination. We therefore conclude that the evidence was come by means sufficiently distinguishable from the exploitation of any illegality to purged of any primary taint. See, *Wong Song*, supra.

In light of the foregoing, the judgment and sentence is hereby AFFIRMED.

BUSSEY, Judge, specially concurs:

The defendant voluntarily accompanied the officers to Oklahoma. She was not placed under arrest until after she had submitted to the polygraph test. The officers served a properly issued warrant for her arrest at the time of her arrest in Oklahoma. She voluntarily consented to a search waiver. Since there was no illegal arrest to taint the subsequent search and seizure *Wong Sun*, supra, has no application in the instant case.

I agree that the conviction should be affirmed.